UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN J. LECHER-ZAPATA,

      Plaintiff,

v.

CONSTRUCTION AND GENERAL
LABORERS UNION LOCAL 1329,
JOEL GALLENO and GENE
ALESSANDRINI,

      Defendants.
_____/

File No.  2:05-CV-294

HON. ROBERT HOLMES BELL

**O P I N I O N**

Plaintiff John J. Lecher-Zapata, appearing *pro se*, filed this action in the Lancaster County, Nebraska, district court, alleging that Defendants Construction and General Laborers Union Local 1329, Joel Galleno and Gene Alessandrini, are liable for tortious interference with contractual relationships. Defendants removed the action to the Nebraska federal district court on the basis of federal question and diversity of citizenship jurisdiction. The case was subsequently transferred to this Court pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses. (Docket # 4).

This action is currently before the Court on Defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject

matter jurisdiction and for failure to state a claim upon which relief can be granted. For the reasons that follow, Defendants' motion will be granted.

## I.

The facts as alleged in Plaintiff's complaint are as follows. Plaintiff John J. Lecher-Zapata is the President of MWE Services, Inc., d/b/a Midwest Demolition and f/k/a Midwest Environmental, Inc. ("Midwest"). In or about December 2003, Midwest entered into a contract with Oscar J. Boldt Construction ("Boldt") to perform selective interior demolition for Boldt at the Wadsworth Hall Renovation Project at Michigan Tech University (the "Project"). (Compl. ¶ 7). In or about February 2004, Midwest entered into a contract with Tweet-Garot Mechanical, Inc. ("Tweet-Garot"), a sub-contractor on the Project, to perform selective interior demolition on the Project. (Compl. ¶ 9). Midwest used its own key employees as well as Local 1329 workers on the Project. (Compl. ¶¶ 8, 10). In May 2004 a dispute arose between Midwest and Local 1329 regarding the allocation of overtime on the Project. (Compl. ¶¶ 11, 12). Despite an agreement regarding overtime allocation, Local 1329 continued to make complaints to Boldt and Tweet-Garot regarding Midwest's labor practices. (Compl. ¶ 13). Local 1329 also filed a claim against Boldt's payment bond, and a claim with the National Labor Relations Board ("NLRB") alleging that Midwest had violated the collective bargaining agreement ("CBA"). (Compl. ¶¶ 14-15). As a result of Local 1329's complaints, Boldt and Tweet-Garot refused to pay Midwest sums due for work performed. (Compl. ¶¶ 14, 17). Local 1329's unfounded complaints against Midwest

constituted intentional interference with Midwest's contractual relationships. (Compl. ¶¶ 19-21). Midwest has assigned to Plaintiff all of its claims against Defendants stemming from work on the Project. (Compl. ¶ 6).

## II.

Defendants have moved to dismiss Plaintiff's complaint pursuant to FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction. According to Defendants, Plaintiff's interference claim is entirely preempted by the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 301, and falls within the exclusive jurisdiction of Section 8 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158.

When a defendant moves to dismiss on grounds of lack of subject matter jurisdiction, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003) (quoting *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)). "In reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits." *Id.* (citing *Rogers v. Stratton Industries*, 798 F.2d 913, 916 (6th Cir. 1986)).

### A. Preemption Under § 301 of the LMRA

It is well settled that state-law claims that are "inextricably intertwined" with consideration of the terms of a labor agreement are preempted by § 301 of the LMRA. *Allis-Chalmers v. Lueck*, 471 U.S. 202, 220 (1985); *Mattis v. Massman*, 355 F.3d 902, 905

3

(6th Cir. 2004); *T.H. Eifert, Inc. v. United Ass'n. of Journeymen*, 422 F. Supp. 2d 818, 836 (W.D. Mich. 2006). Section 301 does not preempt every state-law suit asserting a right that "relates in some way" to a provision in a CBA. *Allis-Chalmers*, 471 U.S. at 220. A state-law claim is only preempted under § 301 "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between parties in a labor contract." *Id*.

The Sixth Circuit has adopted a two-step inquiry to determine whether a state tort claim is sufficiently independent to survive § 301 preemption: (1) would resolving the state law claim require the interpretation of the terms of the CBA, and (2) were the rights claimed by the plaintiff created by the CBA? *Mattis*, 355 F.3d at 906 (citing *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994)). If the answer to either one of these questions is yes, the claim is preempted by § 301. *Id.*

Defendants have submitted evidence that all of Plaintiff's work on the Project was governed by the terms of a CBA between the Michigan Chapter of the Associated General Contractors of America, Inc. and Local 1329. Plaintiff does not deny that Midwest was a signatory to the CBA. In fact, Plaintiff has alleged in his complaint that Defendants interfered with Midwest's contracts with Boldt and Tweet-Garot by making complaints about Midwest's labor practices, by filing a claim against Boldt's payment bond and by filing a claim with the NLRB for Midwest's unspecified violations of the CBA. (Compl. ¶¶ 13, 15).

4

Under Michigan law one who alleges tortious interference with a contract "must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law" for the purpose of invading the contractual rights of another. *Derderian v. Genesys Health Care Systems*, 263 Mich. App. 364, 382, 689 N.W.2d 145, 157-58 (2004) (quoting *CMI Int'l, Inc. v. Intermet Int'l Corp*., 251 Mich. App. 125, 131, 649 N.W.2d 808 (2002)). Accordingly, in order to prove its tortious interference with contract claim against Defendants, Plaintiff will have to show that Defendants' alleged complaints about Midwest's labor practices and its allegations that Midwest violated the CBA were wrongful or unjustified. A determination of whether or not Defendants were justified in making complaints against Midwest will inevitably require interpretation of the CBA. Plaintiff's claim is "inextricably intertwined" with consideration of the terms of the CBA.

In response to Defendants' motion to dismiss, Plaintiff now alleges that his claims are not based on the CBA, but on another agreement entered into by the parties, specifically, the addendum to the CBA. Plaintiff's attempt to base his state law claim on the addendum to the CBA rather than on the underlying CBA does not spare his claims from preemption. The addendum is itself an agreement with Local 1329, so Plaintiff's claim that Defendants violated the addendum is "substantially dependent upon analysis of the terms of an agreement made between parties in a labor contract." *Allis-Chalmers*, 471 U.S. at 220. Furthermore, the CBA is referenced throughout the addendum, and addresses several matters covered by the CBA, including fringe benefits and overtime. Interpretation of the addendum accordingly

5

requires interpretation of the CBA. The Court concludes that Plaintiff's claim of tortious interference with contract is preempted by § 301 of the LMRA.

**B. Garmon Preemption**

The Court also agrees with Defendants' alternative assertion that Plaintiff's claim is preempted by § 8 of the NLRA under the doctrine set forth in *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236 (1959). The general rule established by *Garmon* is that "federal courts do not have jurisdiction over activity which is 'arguably subject to § 7 or § 8 of the [NLRA],' and they 'must defer to the exclusive competence of the National Labor Relations Board.'" *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 609 (6th Cir. 2004) (quoting *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83 (1982)).

Section 8 of the NLRA outlines unfair labor practices by a labor organization or its agents. 29 U.S.C. § 158(b). In *Falls Stamping and Welding Co. v. International Union, United Auto. Workers, Aerospace & Agr. Implement Workers of America, Region II*, 744 F.2d 521, 524 (6th Cir. 1984), the Sixth Circuit held that an employer's tortious interference with contract action against a labor union arising out of the union's authorized and unauthorized strikes, and its alleged use of collective bargaining methods to destroy the company, was preempted under the *Garmon* doctrine because the question of whether strikes and bargaining tactics interfere unlawfully with an employer's business is to be determined by the NLRB. *Id.* at 524. The *Falls Stamping* court observed that "[f]ederal labor law

6

clearly permits employees to inflict economic harm on an employer for purposes of collective bargaining. Methods such as striking and picketing, . . . are intended to cause monetary losses so that compromise or concession becomes a more desirable alternative." *Id.* "If a state court were to rule that the Union's conduct was tortious, it could clash head-on with decisions of the NLRB." *Id.* at 525.

Similarly, it appears in this case that if the Court were to determine that Local 1329's communications with and conduct toward Boldt and Tweet-Garot were improper, it would implicate conduct governed by the NLRA that is within the exclusive jurisdiction of the NLRB. It does not appear that this case falls within any of the three recognized exceptions to the *Garmon* doctrine. *See T.H. Eifert*, 422 F. Supp. at 839 (quoting *Price v. United Mine Workers of Am.*, 336 F.2d 771 (6th Cir. 1964). Accordingly, for this reason as well, the Court is convinced that it does not have subject matter jurisdiction over Plaintiff's tortious interference with contract claim.

### III.

In light of the determination above that this Court does not have subject matter jurisdiction over this case, it is not necessary to address Defendants' alternative argument that Plaintiff's complaint is also subject to dismissal pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

**IV.**

For the reasons stated herein, Defendants' motion to dismiss will be granted. An order and judgment of dismissal consistent with this opinion will be entered.


Date:   October 18, 2006  /s/ Robert Holmes Bell
                                                    ROBERT HOLMES BELL
                                                    CHIEF UNITED STATES DISTRICT JUDGE